UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH MCINTIRE,<br><br>                    Plaintiff,<br><br>         v.<br><br>CAROLYN COLVIN,<br><br>                    Defendant. | CASE NO. C15-5070JLR<br><br>ORDER REVERSING AND REMANDING DECISION DENYING BENEFITS FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

## I.   INTRODUCTION

Plaintiff Kenneth McIntire appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, following a hearing before an Administrative Law Judge ("ALJ"). The court has considered the ALJ's decision, the administrative record, and the parties' memoranda. Being fully advised, the court REVERSES the Commissioner's

ORDER- 1

final decision and REMANDS this action to the Commissioner for further administrative proceedings and rehearing consistent with this order.

## II.   BACKGROUND

The facts of the case are set forth in the ALJ's decision (Dkt. # 11-2 at 20-29)[1], the administrative hearing transcript (Dkt. # 11-2 at 35-62), and the briefs of the parties (Op. Mem. (Dkt. # 18); Resp. (Dkt. # 20); Reply (Dkt. # 19)).  They are only briefly summarized here.

Mr. McIntire filed an application for disability insurance benefits and SSI on May 14, 2012, alleging disability beginning November 1, 2010.  (Dkt #11-5 at 2, 4.)  Mr. McIntire's claims were denied initially on July 26, 2012, and on reconsideration on October 10, 2012.  (Dkt. # 11-4 at 1, 7.)  After a hearing held before an ALJ on April 10, 2013 (Dkt. # 11-2 at 35-62), the ALJ found that Mr. McIntire was not disabled and once again denied his claims for disability insurance benefits and SSI (*id.* at 20-29).  The Appeals Council of the Social Security Administration ("SSA") denied Mr. McIntire's request for review on December 8, 2014, rendering the decision of the ALJ the final decision of the Commissioner.  (Dkt. #11-2 at 1-7.)

In his appeal, Mr. McIntire contends that the ALJ erred in three ways.  (Op. Mem. at 1, 3.)  First, Mr. McIntire contends that the ALJ erred by failing to give germane reasons for rejecting the opinion of Alan Itkin, Physician's Assistant, Certified ("PAC").

---

[1] All of the court's citations to the Administrative Record will be limited to the specific docket number and page number(s) where the item or citation can found on the court's electronic docketing system commonly referred to as CM/ECF.

(*Id.*)  Indeed, the ALJ did not discuss PAC Itkin's opinions or treatment notes at all.  Second, Mr. McIntire contends that the ALJ erred when weighing the opinion evidence of examining psychologist, Dr. Russell Bragg, Ph.D.  (*Id.*)  Third, Mr. McIntire argues that the ALJ erred by failing to provide legally sufficient reasons for finding Mr. McIntire himself not fully credible.  (*Id.*)  Finally, Mr. McIntire contends that, as a result of these errors, the court should remand this action to the SSA for an award of benefits.  (*Id.* at 2.)  The court now considers each of these arguments.

### III.  ANALYSIS

**A.  Standard of Review**

Under 42 U.S.C. § 405(g), the court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  The court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, but the court must not substitute its judgment for that of the Commissioner.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

1    The court will uphold the Commissioner's decision when the evidence is

2 susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676,

3 679 (9th Cir. 2005).  The court may review only the reasons stated by the ALJ "and may

4 not affirm the ALJ on a ground upon which he did not rely."  *Orn*, 495 F.3d at 630; *see*

5 *also Connett*, 340 F.3d at 874.  The court, however, will not reverse the Commissioner's

6 decision for harmless error, which exists when it is "clear from the record that an ALJ's

7 error was 'inconsequential to the ultimate nondisability determination.'"  *Robbins v. Soc.*

8 *Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r, Soc. Sec.*

9 *Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch*, 400 F.3d at 679.

10    **B.  Opinion of the Physician's Assistant**

11    PAC Itkin treated Mr. McIntire for more than a year for his lower back pain, from

12 about January 2011 through at least February 2012.  (*See* Dkt. ## 11-12 at 35; Dkt.  #11-

13 14 at 41.)  On September 7, 2011, PAC Itkin concluded that Mr. McIntire had

14 "significant impingement of the left L5 nerve root."  (Dkt. # 11-13 at 56.)  PAC Itkin also

15 stated that "whether or not [Mr. McIntire] will be able to return to any form of gainful

16 employment does not seem likely at this time."  (*Id.*)  He opined that Mr. McIntire could

17 not perform any work, citing Mr. McIntire's positive CT scan and positive myelogram.

18 (*Id.* at 67, 79.)  He noted that applying for disability was "a reasonable avenue for [Mr.

19 McIntire] to pursue at this time given that he cannot sit or stand for prolonged periods,"

20 "cannot lift heavy objects, and . . . has significant pain and disability from the findings on

21 his lumbar spine MRI and physical exam."  (Dkt. # 11-11 at 7.)  Following treatment on

22

February 27, 2012, PAC Itkin again opined that Mr. McIntire could not return to work. (Dkt. # 11-14 at 43.)

ALJs are required to articulate "specific and legitimate reasons supported by substantial evidence" before discounting or rejecting the opinion of a medically acceptable treating source. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). But not all healthcare providers qualify as "acceptable medical sources." *See* 20 C.F.R. § 404.1513(a) (stating that only "[l]icensed physicians," "[l]icensed or certified psychologists," "[l]icensed optometrists," "[l]icensed podiatrists," and "[q]ualified speech-language pathologists" qualify as "acceptable medical sources"). Medical care providers who do not qualify as "acceptable medical sources" are deemed "other sources" by the regulations. 20 C.F.R. § 404.1513(d).

Both parties agree that PAC Itkin qualifies as an "other source" under the SSA's regulations. (*See* Op. Mem. at 7; Resp. at 2); *see also* 20 C.F.R. § 404.1513(d)(1) ("Other sources include . . . physicians' assistants . . . ."). Such "other source" testimony concerning a claimant's symptoms or how an impairment affects a claimant's ability to work "*is* competent evidence" and "*cannot* be disregarded without comment." *Stout*, 454 F.3d at 1053 (italics in original). "The ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). An ALJ may even completely reject "other source" or lay witness testimony "as long as 'arguably germane reasons' for dismissing the testimony are noted." *Woodsum v.*

1  *Astrue*, 711 F. Supp. 2d 1239, 1262 (W.D. Wash. 2010) (quoting *Lewis v. Apfel*, 236 F.3d
2  503, 512 (9th Cir. 2001)).  Mr. McIntre contends that the ALJ erred, not only by failing to
3  provide "arguably germane reasons" for rejecting PAC Itkin's opinions, but by failing to
4  discuss PAC Itkin's treatment notes and opinions at all.  (Op. Mem. at 7-8.)
5       The Commissioner does not dispute that the ALJ failed to discuss PAC Itkin's
6  treatment notes and opinions and that this was error.  (Resp. at 2 ("The ALJ did not
7  discuss these forms. . . . Usually, an ALJ must consider the observations of an 'other
8  source' medical provider, such as a physician assistant.").)  Instead, the Commissioner
9  argues that the error was harmless because the ALJ relied on the opinion of Dr. Dennis
10 Koukol, M.D., a State agency medical consultant and non-examining medical expert,
11 who reviewed the record and concluded that Mr. McIntire's physical limitations did not
12 preclude him from doing light work.  (*Id.* at 2-4 (citing Dkt. # 11-2 at 26).)  Dr. Koukol in
13 turned relied upon the opinions of Dr. David Bauer, M.D., an orthopedic surgeon, and Dr.
14 Karl Goler, M.D., a neurosurgeon, who conducted an independent medical examination
15 of Mr. McIntire.  (*See* Dkt. ## 11-3 at 39; 11-14 at 67-79.)  Those doctors concluded that
16 Mr. McIntire had only "mild degenerative changes" in his spine, that there were "no
17 objective factors that support[ed Mr. McIntire's] removal from work," and that Mr.
18 McIntire exhibited "several signs of symptom magnification on examination."  (Dkt.
19 # 11-14 at 78-79.)  Thus, the Commissioner argues that despite the ALJ's failure to
20 discuss PAC Itkin's opinions, the ALJ's decision is nevertheless supported by substantial
21 evidence and any error by the ALJ was therefore harmless.  (Resp. at 3-4.)
22

"[T]he harmless error analysis applies in the social security context. . . ." *Marsh v. Colvin*, --- F.3d ----, 2015 WL 4153858, at *2 (9th Cir. 2015). Indeed, the court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). However, "where an ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. The opinions of PAC Itkin are favorable to Mr. McIntire and in direct contravention to the opinions of Dr. Koukol. Further, as Mr. McIntire points out, there is no indication that Dr. Koukol had the opportunity to review PAC Itkin's treatment records or assessments of Mr. McIntire's functional limitations. (*See* Reply at 2 (citing Dkt. # 11-3 at 34-51).) Thus, the court cannot "confidently conclude" on this record that no reasonable ALJ when fully crediting the opinions of PAC Itkin could have reached a different disability determination. Accordingly, the court cannot find the ALJ's error in failing to provide germane reasons for rejecting PAC Itkins' opinions is harmless.

### C.  Opinion of the Examining Psychologist

Dr. Russell Bragg, Ph.D., performed a psychological evaluation of Mr. McIntire on March 23, 2012, for the Washington State Department of Social and Health Services. (Dkt. # 11-14 at 60.) During Dr. Bragg's evaluation, Mr. McIntire described his family and became "so agitated and distressed . . . that he cried uncontrollably and also development chest pains," and "was essentially unable to respond to other questions in

the interview for at least the next 15 minutes." (Dkt. #11-14 at 61.)  Dr. Bragg found Mr. McIntire's presentation to be consistent with severe anxiety and depression.  (*Id.*)  He concluded that Mr. McIntire's "mental/emotional state is so labile at the present time that it does not appear that he can maintain enough stability to perform any type of work reliably." (*Id.* at 62.)

The ALJ noted that Dr. Bragg "report[ed] that he was unable to obtain necessary details due to [Mr. McIntire's] state of distress in the interview . . . ." (Dkt.. # 11-2 at 27.)  The ALJ further stated that, although Dr. Bragg gave Mr. McIntire a "Global Assessment of Functioning (GAF) of 40," "due to [Mr. McIntire's] agitation, such scores have questionable validity."[2]  (*Id.*)  Overall, the ALJ found that "Dr. Bragg's evaluation ha[d] questionable validity," and afforded "little weight to Dr. Bragg's assessment of the claimant's psychological condition." (*Id.*)  Mr. McIntire argues that the ALJ erred by not supporting his decision to give Dr. Bragg's opinion "little weight" with substantial evidence and by supplanting Dr. Bragg's opinion with his own lay assessment.  (Op. Mem. at 9-10.)

---

[2]A GAF score of 40 may be associated with serious impairment. *See Cox v. Astrue*, 495 F.3d 614, 620 n.5 (8th Cir. 2007) (stating that a GAF score in the forties may be associated with serious impairment in occupational functioning); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) ("A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job.") (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM–IVTR") at 34).  The Ninth Circuit, however, has stated that although GAF scores "may be a useful measurement," they are "typically assessed in controlled, clinical settings that may differ from work environments in important respects," and "standing alone," they "do not control determinations of whether a person's mental impairments rise to the level of a disability." *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014).

"[T]he opinion of an examining doctor . . . can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).  The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  An ALJ need not specifically recite that she rejected a doctor's opinion for enumerated reasons.  *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (holding that an ALJ need not cite the magic words, "I reject the physician's opinion because . . .").  Rather, a reviewing court may read the findings and opinion and draw specific and legitimate inferences.  *See id.* (finding that courts are "not deprived of their faculties for drawing specific and legitimate inferences from the ALJ's opinion"); *see also Molina*, 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (citation and internal quotation marks omitted).

An ALJ may consider the "supportability" of a medical opinion.  20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. 416.927(c)(3).  In other words, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the Commissioner] will give that opinion."  20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. 416.927(c)(3).  Consequently, an ALJ may discount a medical opinion that is not adequately supported by objective medical findings.  *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  This is a specific and legitimate reason to reject a physician's opinion.  *See*

*Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

Here, during Dr. Bragg's examination, Mr. McIntire "became so agitated and distressed when relaying the details of his dilemma [concerning his wife and child] that he cried uncontrollably and also developed chest pains." (Dkt # 11-14 at 62.) He "was essentially unable to respond to other questions in the interview for at least the next 15 minutes." (*Id.*) As a result, Dr. Bragg was unable to complete the psychological testing or get "as much detailed information" as he would have liked. (*Id.* at 62, *see also id.* at 65 (noting insufficient time to complete certain tests due to Mr. McIntire's level of distress).) In addition, Dr. Bragg acknowledged that he was unable to get a "clear sense of Axis I mental disorders" even though he diagnosed Mr. McIntire with various impairments. (*Id.* at 62.) Mr. McIntire argues that the ALJ did not adequately explain why, "due to claimant's agitation," Dr. Bragg's opinion had questionable validity. (Op. Mem. at 9.)

When reviewing the ALJ's decision, the court is not "deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 751. Here, the ALJ thought that Dr. Bragg's opinion should be given "little weight" because Mr. McIntire was so upset during the examination that Dr. Bragg was unable to complete his objective testing. (Dkt. # 11-2 at 27.) The court agrees with the Commissioner that this is a legitimate and specific reason supported by substantial

1  evidence in the record for affording less weight to Dr. Bragg's opinion.  Further

2  explanation by the ALJ is not required.  Although the ALJ's findings concerning Dr.

3  Bragg may not have been the model of clarity, the court concludes that the ALJ did not

4  err in this portion of his decision.[3]

### D. Mr. McIntire's Credibility

6        The ALJ found that Mr. McIntire had established the existence of a medically

7  determinable impairment that reasonably could have caused his reported symptoms.  (*See*

8  *id.* at 25.)  Thus, the ALJ was required to consider Mr. McIntire's statements concerning

9  "the intensity and persistence" of his symptoms and "the extent to which [his] symptoms

10 limit [his] capacity for work."  *See* 20 C.F.R. §§ 404.1529, 416.929.  The ALJ,

11 nevertheless, found that Mr. McIntire was not fully credible in his statements concerning

12 his symptoms and their effects for a variety of reasons.  (Dkt. # 11-2 at 25-26.)  In finding

13 that Mr. McIntire was not "entirely credible," the ALJ was required to give "specific,

14 clear and convincing reasons."  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014)

15 ("Where, as here, Claimant has presented evidence of an underlying impairment and the

---

[3] Mr. McIntire also asserts that the ALJ improperly substituted his own lay understanding for the opinion of Dr. Bragg.  (Op. Mem. at 10.)  The ALJ, however, may consider whether a medical opinion is adequately supported by objective medical evidence.  *See* 20 C.F.R. §§404.1527(c)(3); 416.927(c)(3).  The court finds no error in the ALJ doing so here.

Mr. McIntire also argues that the ALJ failed to consider "descriptions noted elsewhere in the record" that were arguably consistent with Dr. Bragg's opinion.  (Op. Mem. at 10-11.)  As the Commissioner points out, however, a claimant's alternative interpretation of the evidence does not invalidate an ALJ's findings.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Batson*, 359 F.3d at 1193 ("[I]f evidence exists to support more than one rational interpretation, [the court] must defer to the Commissioner's decision."); *see also Arkansas v. Oklahoma*, 503 U.S. 91, 1060 (1992) ("The court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence.").  Again, the court finds no error on this basis.

government does not argue that there is no evidence of malingering, [the court] review[s] the ALJ's rejection of her testimony for 'specific, clear and convincing reasons.'") (internal footnote omitted). Mr. McIntire contends that the reasons stated by the ALJ failed to meet this standard. (Op. Mem. at 11-16.)

The Commissioner concedes that some of the reasons the ALJ provided for finding Mr. McIntire not entirely credible "may not have been legally adequate or supported by substantial evidence in the record." (Resp. at 8 (citing Dkt. # 11-2 at 25-26).) Nevertheless, the Commissioner asserts that not every reason provided for disregarding a claimant's credibility must be upheld so long as the ALJ's remaining reasons are valid. In *Carmickle v. Commissioner, Social Security Administration*, the Ninth Circuit stated:

> Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid). Our decision in *Batson* makes clear that reviewing the ALJ's credibility determination *where the ALJ provides specific reasons supporting such* is a substantive analysis. So long as there remains "substantial evidence supporting the ALJ's conclusions on . . . credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," such is deemed harmless and does not warrant reversal. *Id.* at 1197; *see also Stout*, 454 F.3d at 1055 (defining harmless error as such error that is "inconsequential to the ultimate nondisability determination").

*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (italics in original). Thus, the court must determine whether—despite any legally inadequate

reasons—the ALJ's error was harmless and his credibly finding concerning Mr. McIntire remains supported by substantial evidence.

The Commissioner defends only two bases for the ALJ's adverse credibility findings, and thus the court will consider only those two for substantial evidence. First, the Commissioner argues that the ALJ properly found Mr. McIntire to be less than fully credible due to evidence that he tended to magnify his symptoms. (Resp. at 8 (citing Dkt. # 11-2 at 25).) Specifically, the ALJ stated:

> The claimant magnifies his limitations and is not wholly credible. He said that he is unable to sit or stand for long periods and that he lies down daily. Yet, he enjoys activities like reading and playing chess, both of which require considerable sitting and concentration to be enjoyable. . . . [T]he claimant's activities of daily living include cleaning his motor home weekly, preparing his own meals daily, and doing his laundry . . . . He regularly leaves his motor home to do weekly shopping for food and basic necessities . . . .

(Dkt. # 11-2 at 25.) Mr. McIntire asserts that there is no evidence in record about how frequently or how long he played chess or spent time reading or in what body positions he performed these activities. (Op. Mem. at 12.) Mr. McIntire argues that the ALJ's presumption or speculation concerning the manner in which he performed these activities was error. (*See id.* at 12-13 (citing SSR 86-8 ("Reasonable inferences may be drawn, but presumptions, speculations and suppositions should not be substituted for evidence.")).) Mr. McIntire also argues that it was improper for the ALJ to rely on his ability to perform daily activities like cleaning, cooking, and shopping, because performing these activities is not consistent with the ability to work on a regular and continuing basis. (*Id.* at 13.)

ORDER- 13

The court agrees that the ALJ erred in relying on the above described evidence and activities in making his adverse credibility finding. The court takes judicial notice of the fact that reading can be performed laying down and chess can be played standing up. The Commissioner points to no evidence in the record that Mr. McIntire performed these activities in a sitting position or that these activities "require considerable sitting . . . to be enjoyable." (*See* Dkt. # 11-2 at 25.) This conclusion was based on the ALJ's presumptions and speculations—not evidence in the record.

In finding Mr. McIntire "not wholly credible," the ALJ also relied upon Mr. McIntire's testimony concerning his ability to clean his motor home, cook, shop for groceries, and do his laundry. (*Id.*) The Ninth Circuit, however, has repeatedly stated "that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). Nevertheless, daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting." *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see also Burch*, 400 F.3d at 681 (stating that an adverse credibility finding based on activities may be proper "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace"). Here, the ALJ made neither required finding concerning Mr. McIntire's daily activities—that the skills described were "transferrable" to a work setting or that Mr. McIntire spent a "substantial" part of his day engaged in such activities. (*See* Dkt.

# 11-2 at 25.) Accordingly, the court concludes that this basis for discounting Mr. McIntire's credibility is not supported by "substantial evidence."

Next, the Commissioner asserts that, despite other errors, the ALJ's credibility determination is supported by the ALJ's consideration of the medical evidence. (Resp. at 9-10.) The Commissioner argues that the ALJ may consider objective medical evidence as an indicator to assist in making reasonable conclusions about the intensity and persistence of Mr. McIntire's symptoms. (*Id.* at 9 (citing 20 C.F.R. §§ 404.1529(c)(2)-(c)(4)).) However, the Commissioner admits that the ALJ's analysis of Mr. McIntire's pain score was in error because the score related to his shoulder and not his back. (*Id.*) The Commissioner nevertheless argues that the ALJ's adverse credibility finding is sufficiently supported by ALJ's conclusion that the diagnostic imaging of Mr. McIntire's musculoskeletal system is generally benign. (*Id.*) Mr. McIntire disputes the validity of the ALJ's conclusions concerning his diagnostic imaging (Op. Mem. at 16), but ultimately it does not matter whether the ALJ is correct in his analysis here or not. Even assuming the ALJ's analysis of Mr. McInitre's medical imaging is appropriately supported by the evidence, the ALJ may not discount Mr. McIntire's subjective pain testimony solely on this ground. "[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). Yet, because the Commissioner has either conceded that the ALJ's other grounds for discounting Mr. McIntire's credibility were not valid (*see* Resp. at 8) or the court has

ORDER- 15

rejected them (*see supra* at 12-14), this is the only basis that remains to underpin the ALJ's credibility finding.  Ninth Circuit authority prohibits rejecting Mr. McIntire's subjective complaints on this basis alone.  *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); *Lester v. Chater*, 81 f.3d 821, 834 (9th Cir. 1995) ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms because they are unsupported by objective medical evidence."); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").

There may well be valid grounds in the record to discount Mr. McIntire's credibility, but the ALJ failed to articulate them here.  Neither may the court search for these reasons in the record.  Although the court must review the record as a whole, it may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  *Orn*, 495 F.3d at 630.  Accordingly, the court concludes that the ALJ's conclusion (as he articulated it) that Mr. McIntire was not "entirely credible" is not supported by clear, specific and convincing reasons.

### E.  Remand

Mr. McIntire argues that the court should remand for an award of benefits under 42 U.S.C. § 405(g). (Op. Mem. at 17.)  The court agrees with the Commissioner, however, that a finding of disability is not an appropriate remedy here.  (*See* Resp. at 10-

11.) Instead, the court will remand for further administrative proceedings consistent with this order.

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion). The Ninth Circuit counsels that the court should grant an immediate award of benefits when these three conditions are met:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* at 1178 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). If this test is satisfied with respect to the evidence in question, "then remand for determination and payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting" the improperly discredited evidence. *Harman*, 211 F.3d at 1179. After evaluating the record as a whole, however, if serious doubts remain concerning whether the claimant is, in fact, disabled, the court may exercise its discretion and remand the case for further administrative proceedings. *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014); *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). In addition, further administrative proceedings are useful if the record is not free from conflicts, all factual issues have not been resolved, or the claimant's entitlement to

ORDER- 17

benefits is not clear. *Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014.)

Based on the foregoing guidance, the court finds that remand for further administrative proceedings is the appropriate remedy here. All factual issues have not been resolved. Further, even after the ALJ corrects the errors referenced above on remand, Mr. McIntire's entitlement to benefits is not clear. Thus, the court remands for further administrative proceedings consistent with this order and to resolve remaining factual issues and conflicts in the record.

## IV.  CONCLUSION

Based on the stated reasons and the relevant record, the court ORDERS that the Commissioner's decision finding that Mr. McIntire is not disabled is REVERSED and the matter is REMANDED to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). The court DIRECTS the clerk to enter JUDGMENT for Mr. McIntire and to close this case.

Dated this 15th day of July, 2015.

JAMES L. ROBART
United States District Judge